IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| NEAL LEWIS GRAY,<br><br>Plaintiff,<br><br>vs.<br><br>DAVID HARRIS and C/O HARDING,<br><br>Defendants. | CV 17-00083-H-BMM-JTJ<br><br>FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE |

Pending are Plaintiff Neal Gray's claims that Defendants Harris and Harding retaliated against him in violation of the First Amendment. Defendants have filed a motion for summary judgment arguing that Mr. Gray failed to exhaust his administrative remedies with regard to these issues. (Doc. 29.) The Court finds that there are genuine issues of material fact regarding whether Mr. Gray exhausted administrative remedies regarding his claims and as such Defendants' motion should be denied.

## I. MOTION FOR SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). The party moving for summary judgment has the initial burden of showing there is no genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157

1

(1970). If the moving party makes a prima facie showing that summary judgment is appropriate, the burden shifts to the opposing party to show the existence of a genuine issue of material fact. *Id*. On summary judgment, all inferences should be drawn in the light most favorable to the party opposing summary judgment. *Id*. at 159.

By notice provided on July 13, 2018 (Doc. 32), Mr. Gray was advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998)(en banc); *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

## II. FACTS[1]

Plaintiff Neal Lewis Gray is currently an inmate at Montana State Prison (MSP) and was an inmate at MSP at all times relevant to the Complaint. (Statement of Undisputed Facts, Doc. 30 at ¶ 1.) When inmates arrive at MSP, they are required to attend orientation, which includes an explanation of the process and procedures of the grievance program. (Statement of Undisputed Facts, Doc. 30 at ¶ 2.) Mr. Gray completed orientation – including the orientation on the grievance process – at MSP on November 30, 2016. (Statement of

---

[1]Mr. Gray failed to file a statement of disputed facts in response to Defendants' motion as required by Local Rule 56.1(b). Pursuant to Local Rule 56.1(d), Mr. Gray's failure to file a statement of disputed facts is deemed an admission that no material facts are in dispute.

Undisputed Facts, Doc. 30 at ¶ 4.) During orientation, inmates are informed that if they do not first exhaust their administrative remedies for classifications, grievances, or disciplinary decisions, they will be unable to challenge the issue in court. (Statement of Undisputed Facts, Doc. 30 at ¶ 5.)

MSP Procedure 3.3.3, which implements DOC Policy 3.3.3, dictates the process whereby inmates may make complaints on grievable issues to MSP administration. (Statement of Undisputed Facts, Doc. 30 at ¶ 9.) All the necessary procedures explaining the grievance process, including MSP Procedure 3.3.3 and DOC Policy 3.3.3, are available to inmates in the MSP inmate library. (Statement of Undisputed Facts, Doc. 30 at ¶ 10.) The forms essential to file a grievance are available in the units, through the case managers, or from Billie Reich, the program manager of the grievance, disciplinary departments at MSP. (Statement of Undisputed Facts, Doc. 30 at ¶ 11; Reich Affidavit (Doc. 30-1 at 2, ¶ 3.)

According to MSP Procedure 3.3.3, an inmate must file a grievance for any "issues including, but not limited to . . . staff conduct . . . and other standard grievance matters . . ." (Statement of Undisputed Facts, Doc. 30 at ¶ 12.) The only exceptions, or "non-grievable issues," are "actions by outside entities not under the jurisdiction of the DOC," and "classification, disciplinary, and any other decision which is subject to a separate appeal procedure or administrative review

3

process." (Statement of Undisputed Facts, Doc. 30 at ¶ 13.)

There are three steps to the grievance procedure for staff conduct and policy and operational procedure grievances: (1) informal resolution, (2) formal grievance, and (3) appeal to the DOC director. (Statement of Undisputed Facts, Doc. 30 at ¶ 14.) A staff conduct or other general grievance must be submitted to MSP within five working days of the grievable incident or conduct, and each appeal step has timelines. (Statement of Undisputed Facts, Doc. 30 at ¶ 15.) A grievance alleging retaliation by MSP staff typically is considered a staff conduct grievance. (Statement of Undisputed Facts, Doc. 30 at ¶ 16.) MSP Procedure 3.3.3 expressly notifies each inmate that, if he fails "to advance to the next level of the grievance program within the stated time limit, he will be considered to have forfeited the opportunity to exhaust his administrative remedies under the inmate grievance program." (Statement of Undisputed Facts, Doc. 30 at ¶ 17.)

Mr. Gray's grievance file at MSP shows that he filed complaints under the grievance program numerous times on issues involving staff conduct, scheduling, prescription of medicine, legal mail, medical attention, disciplinary issues, the need for a fan for his cell, and loss of property. Most of his grievances concern allegations relating to staff conduct. (Statement of Undisputed Facts, Doc. 30 at ¶ 22.) Mr. Gray has not exhausted any of his grievances submitted under the

4

grievance policy. (Statement of Undisputed Facts, Doc. 30 at ¶ 23.)

Mr. Gray submitted an informal grievance, a formal grievance, and another informal grievance making allegations against Officer Harris with respect to claimed retaliation. Mr. Gray's first informal and his formal grievance, submitted in March of 2017, were returned to him with instructions that he could resubmit the grievances with corrections. On April 13, 2017, he submitted an informal grievance containing allegations of retaliation by Officer Harris, and this grievance was denied by Unit Manager Daniels. Mr. Gray signed the grievance following denial by Unit Manager Daniels, but he did not appeal the denial of the grievance to the formal level. Mr. Gray could have advanced and exhausted his grievance alleging retaliation against Officer Harris, but he did not. (Statement of Undisputed Facts, Doc. 30 at ¶ 24.)

Mr. Gray did not file an informal resolution against Officer Harding and has not filed any complaint under the grievance procedure alleging that any MSP officer retaliated against him by reprimanding him for communications with other inmates outside the day room. (Statement of Undisputed Facts, Doc. 30 at ¶ 25.)

### III. ANALYSIS

The Prison Litigation Reform Act ("PLRA")'s exhaustion requirement states:

5

> [n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a); *see also Porter v. Nussle*, 534 U.S. 516, 524-25 (2002); *Booth v. Churner*, 532 U.S. 731, 741 (2001). This means a prisoner must "complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). Exhaustion is mandatory. *Booth,* 532 U.S. at 741; *Jones v. Bock*, 549 U.S. 199, 211 (2007). Under the PLRA, prison regulations define the exhaustion requirements. *Jones*, 549 U.S. at 218.

The defendant bears the ultimate burden of proving failure to exhaust. *See Brown v. Valoff*, 422 F.3d 926, 936 (9th Cir. 2005). If the defendant initially shows that (1) an available administrative remedy existed and (2) the prisoner failed to exhaust that remedy, then the burden of production shifts to the plaintiff to bring forth evidence "showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014). Once the defendant has carried that burden, the prisoner must produce evidence

6

demonstrating that "the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile." *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (internal citations and quotation marks omitted).

"The ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" *Ross v. Blake*, 136 S.Ct. 1850, 1858 (2016) (citing *Booth*, 532 U.S., at 737–738.) Therefore, inmates must exhaust those "grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id.* at 1859 (quoting *Booth*, 532 U.S., at 738, 121 S.Ct. 1819.)

There are three general situations that can render a prison or jail grievance process unavailable to an inmate. First, an administrative procedure is not available, and therefore need not be exhausted, "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Ross*, 136 S.Ct. at 1859.

Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* "When rules are so confusing that no reasonable prisoner can use them, then they're no

longer available." *Id.* (internal quotation marks and alteration omitted). However, the procedures need not be sufficiently "plain" as to preclude any reasonable mistake or debate with respect to their meaning. *Id.* Therefore, when an administrative process is susceptible of multiple reasonable interpretations, Congress has determined that the inmate should err on the side of exhaustion. *Id.*

Finally, administrative remedies will be deemed unavailable if "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation" or if administrators otherwise interfere with an inmate's pursuit of relief. *Id.* at 1860. For example, if the prison improperly processed an inmate's grievance, if prison officials misinformed an inmate regarding grievance procedures, or if the inmate "did not have access to the necessary grievance forms within the prison's time limits for filing the grievance," the remedies will be considered unavailable. *Albino*, 747 F.3d at 1172-73; *see also McBride v. Lopez*, 807 F.3d 982, 987 (9th Cir. 2015) (holding that an inmate's fear of retaliation may suffice to render the grievance process unavailable, if the prisoner (1) "provide[s] a basis for the court to find that he actually believed prison officials would retaliate against him if he filed a grievance," and (2) "demonstrate[s] that his belief was objectively reasonable").

Mr. Gray alleged in his Complaint that Marisa Bostwick, MSP Education

Director allowed another inmate to steal items from the library and threaten to stab another inmate. (Doc. 2 at 6.) Mr. Gray wrote an Offender/Staff Request (OSR) form to low side Librarian Wendy Zuber on February 16, 2017 making these allegations against Ms. Bostwick. (Doc. 30-5 at 44; MSJ Response, Doc. 35 at 3.) On February 22, 2017, Ms. Bostwick issued a major write-up to Mr. Gray on the grounds that he refused to recant the false allegations in the OSR. (Doc. 30-5.)

Mr. Gray alleged in his Complaint that on February 22, 2017 at 2:15 p.m. he was called to low support and handed the OSR he wrote against Ms. Bostwick and Defendant Harris threatened to send him to the "hole" and that he would "disappear from there." (Doc. 2 at 6.) Mr. Gray contends he wrote an informal grievance form complaining about Sgt. Harris's actions that same day. The informal consisted of three pages and is attached to the Complaint. (Doc. 2-4 at 1.) This informal grievance is not in Mr. Gray's prison's grievance file provided by Defendants. (Doc. 30-5.)

There was a hearing on Ms. Bostwick's disciplinary write-up on March 1, 2017 and Mr. Gray was found guilty. Mr. Gray indicated on the hearing form that he wished to appeal. (Doc. 2-4 at 9.) On April 19, 2017, Mr. Gray wrote an OSR to Associate Warden Wilson indicating he wrote out an appeal form and wrote his appeal on regular paper and stapled these to the appeal. He claims he put the

9

appeal form under hearing officer's door at breakfast. He stated it had been more than 30 working days and he had not heard about his appeal. There was no response on the OSR. (Doc. 2-4 at 25.)

On March 2, 2017, Mr. Gray wrote a three-page informal resolution form complaining that he was facing retaliation for using the grievance system and asking that the videos of the February 22, 2017 incident be saved as evidence. He indicated on the second page of the form that he wanted the staff involved to be investigated and he wanted to know how they were allowed to issue him a major write-up for using the grievance system. On March 14, 2017, Thomas Wilson responded as follows:

> Your informal resolution is being returned as "not processed." Your generalization of staff misconduct does not constitute a grievable issue. Your main focus is the rule infraction you received, which by procedure is not grievable as there is an appeal process. Should you have specific information regarding staff misconduct resubmit with 48 hours of receipt of this form.

(Doc. 2-4 at 12-13.)

On February 23, 2017, Mr. Gray wrote an offender/staff request (OSR) form to Captain Zuber asking that the videos from low support on February 22, 2017 at 2:15 p.m. be retained forever. (Doc. 2-4 at 5.) On February 27, 2017, Mr. Gray wrote another OSR to Captain Zuber asking how Ms. Bostwick received a copy of

10

his grievance against her and asking how Ms. Bostwick and Defendant Harris could be retaliating against him. (Doc. 2-4 at 7.) On March 14, 2017, Captain Zuber responded wrote in response to both OSRs that , "This issue has been resolved." (Doc. 2-4 at 5, 7.)

On March 18, 2017, Mr. Gray wrote a formal grievance regarding being written up for using the grievance system. He complained that Captain Zuber said the complaint has been settled but that nothing has been settled and nothing has been investigated. He also complained that Officer Harris was glaring at him and he didn't feel safe around Officer Harris. On April 12, 2017, Ms. Reich responded that AW Wilson had told Mr. Gray that he needed to resubmit his informal and because he had not done so the formal grievance was not processed but he could resubmit an informal resolution form within 48 hours. (Doc. 2-4 at 15-16.)

On April 13, 2017, Mr. Gray resubmitted his informal again complaining that Marissa Bostwick allowed an inmate to steal supplies from the library and knew that this inmate had threatened another inmate. His action requested was to remove the write-up and stop all retaliations and issue inmates recording devices to prove they are not lying. On April 18, 2017, the informal was denied on the grounds that Mr. Gray could not grieve disciplinary issues and he needed to submit an appeal on the write-up. (Doc. 2-4 at 23.)

11

Defendants argue that Mr. Gray failed to exhaust his administrative remedies because he failed to follow the grievance procedure. But the prison either denied or refused to process Mr. Gray's attempts to grieve the claimed retaliation by Officer Harris by stating it was a disciplinary issue which was not grievable. It is undisputed that exceptions to the grievance requirement ("non-grievable issue") are "classification, disciplinary, and any other decision which is subject to a separate appeal procedure or administrative review process." (Statement of Undisputed Facts, Doc. 30 at ¶ 13.)

According to Defendants, there was no available remedy under the grievance procedure. Specifically, Thomas Wilson responded to Mr. Gray's March 2, 2017 informal resolution form stating, "Your informal resolution is being returned as "not processed." Your generalization of staff misconduct does not constitute a grievable issue. Your main focus is the rule infraction you received, which by procedure is not grievable as there is an appeal process." (Doc. 2-4 at 12.) Similarly, the response to Mr. Gray's April 13, 2017 informal was, "you cannot grieve disciplinary. Submit an appeal on the write-up." (Doc. 204 at 23.) Mr. Gray indicated in his April 2017 OSR to Wilson attached to his Complaint that he submitted an appeal of the disciplinary hearing and got no response.

12

Defendants characterized Mr. Gray's complaints as disciplinary issues subject to a separate appeal process and therefore cannot now argue that he failed to exhaust his administrative remedies under the grievance procedure. It is undisputed that disciplinary issues are not grievable because they are subject to a separate appeal procedure. (MSP 3.3.3 III(A)(2).) Accordingly, Defendants have not met their burden of establishing that Mr. Gray did not exhaust an "available" administrative remedy.

The same issue arises with regard to Defendant Harding. Although Defendant Harding denied issuing a write-up to Mr. Gray (Answer, Doc. 11), Mr. Gray alleged in his Complaint that Officer Harding wrote him up in retaliation for filing the grievance against Ms. Bostwick. The basis of the motion for summary judgment is that Mr. Gray did not file a grievance against Officer Harding but again, this was allegedly a disciplinary issue which would not be grievable.

It is not clear to the Court whether Mr. Gray was actually issued a disciplinary write-up by Officer Harding, whether Mr. Gray appealed the disciplinary write-ups by Officer Harris and/or Harding, or whether those disciplinary proceedings constituted proper exhaustion of his retaliation claims. As such, there is a question of fact regarding whether Mr. Gray adequately exhausted his administrative remedies with regard to his disciplinary write-ups at

issue in this case.

Based upon the foregoing, the Court issues the following:

## RECOMMENDATIONS

Defendant's Motion for Summary Judgment (Doc. 29) should be DENIED.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT

The parties may file objections to these Findings and Recommendations within fourteen (14) days after service (mailing) hereof.[2]  28 U.S.C. § 636.  Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

This order is not immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Fed.R.App.P. 4(a), should not be filed until entry of the District Court's final judgment.

DATED this 12th day of February, 2019.

                                        */s/ John Johnston*
                                        John Johnston
                                        United States Magistrate

---

[2] Rule 6(d) of the Federal Rules of Civil Procedure provides that "[w]hen a party may or must act within a specified time after being served and service is made under Rule 5(b)(2)(C) (mail) . . . 3 days are added after the period would otherwise expire under Rule 6(a)."  Therefore, since Mr. Gray is being served by mail, he is entitled an additional three (3) days after the period would otherwise expire.