# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# HELENA DIVISION

| | |
|---|---|
| NEAL LEWIS GRAY,<br><br>Plaintiff,<br><br>vs.<br><br>DAVID HARRIS and C/O HARDING,<br><br>Defendants. | CV-17-83-H-BMM-JTJ<br><br><br>**ORDER ADOPTING FINDINGS AND RECOMMENDATIONS** |

Plaintiff Neal L. Gray ("Mr. Gray") brought suit against Defendants David Harris and Mr. Harding ("Defendants") alleging that Defendants retaliated against him in violation of the First Amendment. (Doc. 2). United States Magistrate Judge John Johnston entered Findings and Recommendations in this matter on February 12, 2019. (Doc. 47). Judge Johnston determined that there was a "question of fact regarding whether Mr. Gray adequately exhausted his administrative remedies with regard to his disciplinary write-ups at issue in this case." *Id.* at 13-14. Defendants timely filed an objection on February 26, 2019. (Doc. 50).

The Court reviews *de novo* Findings and Recommendations to which a party timely objects. 28 U.S.C. § 636(b)(1). The Court reviews for clear error portions

of Judge Johnston's Findings and Recommendations to which the parties specifically objected. *McDonnell Douglas Corp. v. Commodore Bus. Mach., Inc.*, 656 F.2d 1309, 1313 (9th Cir. 1981).

# I. UNDISPUTED FACTS

Plaintiff is currently an inmate at Montana State Prison ("MSP") and was an inmate at MSP at all times relevant to the Complaint. (Statement of Undisputed Facts, Doc. 30 at ¶ 1). When inmates arrive at MSP, they are required to attend orientation. Orientation includes an explanation of the process and procedures of the grievance program. *Id.* at ¶ 2. Mr. Gray completed orientation – including the orientation on the grievance process – at MSP on November 30, 2016. *Id.* at ¶ 4. Inmates are informed that if they do not first exhaust their administrative remedies for classifications, grievances, or disciplinary decisions, they will be unable to challenge the issue in court. *Id.* at ¶ 5.

MSP Procedure 3.3.3, which implements DOC Policy 3.3.3, dictates the process whereby inmates may make complaints on grievable issues to MSP administration. *Id.* at ¶ 9. All the necessary procedures explaining the grievance process, including MSP Procedure 3.3.3 and DOC Policy 3.3.3, are available to inmates in the MSP inmate library. *Id.* at ¶ 10. The forms essential to file a grievance are available in the units, through case managers, or from Billie Reich, the program manager of the

grievance and disciplinary departments at MSP. *Id.* at ¶ 11; Reich Affidavit (Doc. 30-1 at 2, ¶ 3).

According to MSP Procedure 3.3.3, an inmate must file a grievance for any "issues including, but not limited to . . . staff conduct . . . and other standard grievance matters . . ." (Statement of Undisputed Facts, Doc. 30 at ¶ 12). The only exceptions, or "non-grievable issues," are "actions by outside entities not under the jurisdiction of the DOC," and "classification, disciplinary, and any other decision which is subject to a separate appeal procedure or administrative review process." *Id.* at ¶ 13.

There are three steps to the grievance procedure for staff conduct and policy and operational procedure grievances: (1) informal resolution, (2) formal grievance, and (3) appeal to the DOC director. *Id.* at ¶ 14. A "staff conduct" or other general grievance must be submitted to MSP within five working days of the grievable incident or conduct, and each appeal step possesses timelines. *Id.* at ¶ 15. A grievance alleging retaliation by MSP staff typically is considered a "staff conduct" grievance. *Id.* at ¶ 16. MSP Procedure 3.3.3 expressly notifies each inmate that, if he fails "to advance to the next level of the grievance program within the stated time limit, he will be considered to have forfeited the opportunity to exhaust his administrative remedies under the inmate grievance program." *Id.* at ¶ 17.

Mr. Gray's grievance file at MSP shows that he filed complaints under the grievance program numerous times on issues involving staff conduct, scheduling, prescription of medicine, legal mail, medical attention, disciplinary issues, the need for a fan for his cell, and loss of property. Most of his grievances concern allegations relating to staff conduct. *Id.* at ¶ 22. Mr. Gray has not exhausted any of his grievances submitted under the grievance policy. *Id.* at ¶ 23. Mr. Gray submitted an informal grievance, a formal grievance, and another informal grievance making allegations against Officer Harris with respect to claimed retaliation. *Id.* at ¶ 24. Mr. Gray's first informal and his formal grievance, submitted in March of 2017, were returned to him with instructions that he could resubmit the grievances with corrections. *Id.*

On April 13, 2017, Mr. Gray submitted an informal grievance containing allegations of retaliation by Officer Harris, and this grievance was denied by Unit Manager Daniels. *Id.* Mr. Gray signed the grievance following denial by Unit Manager Daniels, but he did not appeal the denial of the grievance to the formal level. Mr. Gray could have advanced and exhausted his grievance alleging retaliation against Officer Harris, but he did not. *Id.* at ¶ 24.

Mr. Gray did not file an informal resolution against Officer Harding and has not filed any complaint under the grievance procedure alleging that any MSP officer

4

retaliated against him by reprimanding him for communications with other inmates outside the day room. *Id.* at ¶ 25.

## II. LEGAL STANDARD

Summary judgment is appropriate if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). The party moving for summary judgment has the initial burden of showing there is no genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If the moving party makes a prima facie showing that summary judgment is appropriate, the burden shifts to the opposing party to show the existence of a genuine issue of material fact. *Id.* On summary judgment, all inferences should be drawn in the light most favorable to the party opposing summary judgment. *Id.* at 159. By notice provided on July 13, 2018 (Doc. 32), Mr. Gray was advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

## III. DISCUSSION

Defendants ask the Court to determine that the undisputed record shows that Gray was not misinformed, and that Gray failed to exhaust his claim of retaliation against Harris. (Doc. 50 at 7). The Defendants argue that Mr. Gray was not denied

process, but that Mr. Gray failed to follow MSP's labyrinth of grievance procedures.

Judge Johnston's analysis proves accurate here. The Prison Litigation Reform Act ("PLRA")'s exhaustion requirement states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). A prisoner must "complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). Exhaustion proves mandatory. *Booth v. Churner*, 532 U.S. 731, 741 (2001); *Jones v. Bock*, 549 U.S. 199, 211 (2007). Under the PLRA, prison regulations define the exhaustion requirements. *Jones*, 549 U.S. at 218.

The defendant bears the ultimate burden of proving failure to exhaust. *See Brown v. Valoff*, 422 F.3d 926, 936 (9th Cir. 2005). If the defendant initially shows that (1) an available administrative remedy existed and (2) the prisoner failed to exhaust that remedy, then the burden of production shifts to the plaintiff to bring forth evidence "showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014). Once

6

the defendant has carried that burden, the prisoner must produce evidence demonstrating that "the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile." *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (internal citations and quotation marks omitted).

"The ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" *Ross v. Blake*, 136 S.Ct. 1850, 1858 (2016) (*citing Booth*, 532 U.S., at 737–738). Therefore, inmates must exhaust those "grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id.* at 1859 (*quoting Booth*, 532 U.S., at 738).

There are three general situations that can render a prison or jail grievance process unavailable to an inmate. First, an administrative procedure is not available, and therefore need not be exhausted, "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Ross*, 136 S.Ct. at 1859. Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* "When rules are so confusing that no reasonable prisoner can use them, then they're no longer available." *Id.* (internal quotation marks and alteration omitted).

7

However, the procedures need not be sufficiently "plain" as to preclude any reasonable mistake or debate with respect to their meaning. *Id.* Therefore, when an administrative process is susceptible of multiple reasonable interpretations, Congress has determined that the inmate should err on the side of exhaustion. *Id.*

Finally, administrative remedies will be deemed unavailable if "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation" or if administrators otherwise interfere with an inmate's pursuit of relief. *Id.* at 1860. For example, if the prison improperly processed an inmate's grievance, if prison officials misinformed an inmate regarding grievance procedures, or if the inmate "did not have access to the necessary grievance forms within the prison's time limits for filing the grievance," the remedies will be considered unavailable. *Albino*, 747 F.3d at 1172-73; *see also McBride v. Lopez*, 807 F.3d 982, 987 (9th Cir. 2015) (holding that an inmate's fear of retaliation may suffice to render the grievance process unavailable, if the prisoner (1) "provide[s] a basis for the court to find that he actually believed prison officials would retaliate against him if he filed a grievance," and (2) "demonstrate[s] that his belief was objectively reasonable").

A. **Mr. Gray's Administrative Attempts**

What Defendants fail to see is how Mr. Gray's administrative remedies were inherently unavailable. Mr. Gray alleged in his Complaint that Marisa Bostwick,

MSP Education Director allowed another inmate to steal items from the library and threaten to stab another inmate. (Doc. 2 at 6). Mr. Gray wrote an Offender/Staff Request ("OSR") form to Librarian Wendy Zuber on February 16, 2017, making these allegations against Ms. Bostwick. (Doc. 30-5 at 44; MSJ Response, Doc. 35 at 3). Ms. Bostwick issued a major write-up, on February 22, 2017, to Mr. Gray on the grounds that he refused to recant the false allegations in the OSR. (Doc. 30-5).

Mr. Gray alleged in his Complaint that on February 22, 2017 at 2:15 p.m. he was called to low support and handed the OSR he wrote against Ms. Bostwick and that Defendant Harris threatened to send him to "the hole" and that Mr. Gray would "disappear from there." (Doc. 2 at 6). Mr. Gray contends he wrote an informal grievance form complaining about Defendant Harris's actions that same day. The informal consisted of three pages and is attached to the Complaint. (Doc. 2-4 at 1). This informal grievance is not in Mr. Gray's prison grievance file provided by Defendants. (Doc. 30-5).

There was a hearing on Ms. Bostwick's disciplinary write-up on March 1, 2017 and Mr. Gray was found guilty. Mr. Gray indicated on the hearing form that he wished to appeal. (Doc. 2-4 at 9). Mr. Gray wrote an OSR to Associate Warden Wilson, on April 19, 2017, indicating that he wrote out an appeal form and wrote his appeal on regular paper and stapled these to the appeal. Mr. Gray claims that he put the appeal form under the hearing officer's door at breakfast. He stated

also that it had been more than thirty working days and he had not heard about his appeal. There was no response on the OSR. (Doc. 2-4 at 25).

Mr. Gray wrote a three-page informal resolution form on March 2, 2017, complaining that he was facing retaliation for using the grievance system and asking that the videos of the February 22, 2017, incident be saved as evidence. Mr. Gray indicated on the second page of the form that he wanted the staff involved to be investigated and that he wanted to know how they were allowed to issue him a major write-up for using the grievance system. Thomas Wilson responded on March 14, 2017, telling Mr. Gray that his "informal resolution is being returned as 'not processed.'" (Doc. 2-4 at 12-13). Wilson stated that Mr. Gray's "generalization of staff misconduct does not constitute a grievable issue. [That Mr. Gray's] main focus is the rule infraction [he] received, which by procedure is not grievable as there is an appeal process." *Id.* Wilson informed Mr. Gray that Mr. Gray should resubmit his informal resolution within forty-eight hours with specific information regarding staff misconduct. *Id.*

Mr. Gray wrote an OSR form to Captain Zuber on February 23, 2017, asking that the videos from February 22, 2017 at 2:15 p.m. be retained forever. (Doc. 2-4 at 5). Mr. Gray wrote another OSR to Captain Zuber on February 27, 2017, asking how Ms. Bostwick received a copy of his grievance against her and asking how Ms. Bostwick and Defendant Harris could be retaliating against him. (Doc. 2-4 at

7). Captain Zuber responded to both OSRs on March 14, 2017, telling Mr. Gray that "[t]his issue has been resolved." (Doc. 2-4 at 5, 7).

Mr. Gray wrote a formal grievance on March 18, 2017, regarding being written up for using the grievance system. He complained that Captain Zuber said that the complaint has been settled but that nothing has been settled and nothing has been investigated. He also complained that Officer Harris was glaring at him and he didn't feel safe around Officer Harris. On April 12, 2017, Ms. Reich responded that Wilson had told Mr. Gray that he needed to resubmit his informal and because he had not done so the formal grievance was not processed but he could resubmit an informal resolution form within forty-eight hours. (Doc. 2-4 at 15-16).

Mr. Gray resubmitted his informal again on April 13, 2017, complaining that Ms. Bostwick allowed an inmate to steal supplies from the library and knew that this inmate had threatened another inmate. Mr. Gray's requested action was to remove the write-up and stop all retaliations and issue inmates recording devices to prove they are not lying. The informal was denied on April 18, 2017, on the grounds that Mr. Gray could not grieve disciplinary issues and he needed to submit an appeal on the write-up. (Doc. 2-4 at 23).

**B. Objections**

Defendants object to Judge Johnston's determination that "the prison either denied or refused to process Mr. Gray's attempts to grieve the retaliation by Officer Harris by stating it was a disciplinary issue which is not grievable." (Doc. 47 at 12). Disciplinary issues are non-grievable issues pursuant to MSP 3.3.3., and are subject to an appeal process. Mr. Gray indicated that he submitted an appeal of the disciplinary hearing and received no response. (Doc. 47 at 12). An issue of fact remains and will be left to a jury to decide.

Defendants object to Judge Johnston's determination that "[a]ccording to Defendants, there was no available remedy under the grievance procedure." *Id.* There are three general situations that can render a prison or jail grievance process unavailable to an inmate. First, an administrative procedure is not available when "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Ross*, 136 S.Ct. at 1859. Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* "When rules are so confusing that no reasonable prisoner can use them, then they're no longer available." *Id.* (internal quotation marks and alteration omitted).

The record is clear that Mr. Gray has exhausted himself—if not the administrative process—in navigating the labyrinth of prison procedures in hope of

a remedy. Judge Johnston made clear the objectively confusing procedural web Mr. Gray struggled to navigate in Judge Johnston's analysis. The numerous hoops Mr. Gray was directed to jump through in an effort to be heard parallels the situation the Supreme Court outlined in *Ross*. Accordingly, the administrative remedies were not available to Mr. Gray despite the Defendants' effort to say otherwise.

Mr. Gray alleged in his Complaint that Defendant Harding wrote up Mr. Gray in retaliation for filing the grievance against Ms. Bostwick. (Doc. 47 at 13). Defendant Harding denies writing up Mr. Gray. (Doc. 11). The issues regarding what Defendant Harding did in relation to the alleged write-up remain disputed and resolution of this genuine issue of material fact will be left to the jury.

Judge Johnston articulates well that it is not clear to the Court whether Mr. Gray was actually issued a disciplinary write-up by Officer Harding, whether Mr. Gray appealed the disciplinary write-ups by Officer Harris and/or Harding, or whether those disciplinary proceedings constituted proper exhaustion of his retaliation claims. The existence of these disputed issues of material fact preclude summary judgment and these competing claims must be resolved by the jury.

As such, there remains questions of fact regarding whether Mr. Gray adequately exhausted his administrative remedies with regard to his disciplinary write-ups at issue in this case.

# I. CONCLUSION

The Court has reviewed Judge Johnston's Findings and Recommendations regarding this matter *de novo*. The Court has reviewed the remaining portions of Judge Johnston's Findings and Recommendations for clear error. The Court finds no error in Judge Johnston's Findings and Recommendations and adopts them in full.

**IT IS ORDERED** that Judge Johnston's Findings and Recommendations (Doc. 47) are ADOPTED IN FULL.

**IT IS ORDERED** that the Defendants' Motion for Summary Judgement (Doc. 29) is **DENIED**.

DATED this 8th day of April, 2018.

_____
Brian Morris
United States District Court Judge