IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| NEAL LEWIS GRAY, | CV 17-00083-H-BMM-JTJ |
| Plaintiff, | |
| vs. | ORDER AND FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE |
| DAVID HARRIS and C/O HARDING, | |
| Defendants. | |

Plaintiff Neal Gray, a state prisoner proceeding without counsel, alleges Defendants Harris and Harding retaliated against him in violation of the First Amendment.  Pending are the following motions:  (1) Mr. Gray's Motion for Addium (Doc. 58); (2) Mr. Gray's Motion for Pre-Trial Order (Doc. 59); (3) Defendant Harding's Second Motion for Summary Judgment based on Failure to Exhaust (Doc. 60); (4) Defendants' Non-Procedural Motion for Summary Judgment (Doc. 64); (5) Mr. Gray's Motion for Addendum (Doc. 74); and (6) Mr. Gray's Brief in Support of a Summary Judgment in Favor of Plaintiff Mr. Gray (Doc. 76).

## I.  DISCOVERY MOTIONS

Mr. Gray filed two motions which the Court has construed as discovery motions.  (Docs. 58, 74.)  Mr. Gray first filed a document entitled "Motion for Addium MOTION TO ADMIT PROCEDURE NO; MSP 3.1.3, MSP LOGS AND

1

RECORD KEEPING SYSTEM." (Doc. 58.) In the motion itself, Mr. Gray discusses some prison policies but in an attached letter to defense counsel, he discusses employee disciplinary records. (Doc. 58-1.) Mr. Gray's second motion is entitled "Motion for Addendum Letters of Discovery to Defendants/ & their Attorney" and therein he appears to be seeking Defendants' disciplinary records. (Doc. 74.)

The Court construes Mr. Gray's filings as motions to compel and as such they will be denied. As the Court has previously advised Mr. Gray, in order to compel discovery, he must first serve discovery requests using the methods set out in the Federal Rules of Civil Procedure. (Order dated March 14, 2019, Doc. 53 at 1-2.) Defendants have again indicated that Mr. Gray has not served any discovery requests and Mr. Gray did not attach a copy of any discovery requests as required by Local Rule 26.3(c)(2)(C). Therefore, both motions will be denied.

## II.   MOTION FOR PRE-TRIAL ORDER

Mr. Gray also filed a "Motion for Pre-Trial Order" (Doc. 59) but the document is actually a brief in support of Mr. Gray's claims. The relief sought in the filing is judgment in favor of Mr. Gray. For the reasons set forth below, Mr. Gray is not entitled to judgment in his favor. The motion will be denied.

## III.   MOTIONS FOR SUMMARY JUDGMENT

In his Complaint Mr. Gray alleged that on February 22, 2017, he was handed

back a grievance he had written against Marisa Bostwick and Officer David Harris threatened to send him to the hole and told him he would disappear there.  He also alleges that later that day Officer Harding wrote him up and was yelling at him for talking on the upper tier.  (Complaint, Doc. 2 at 6.)  Mr. Gray suggests these actions were taken in retaliation for his grievance activities.

### A.  STANDARD

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a).  Under summary judgment practice, "[t]he moving party initially bears the burden of proving the absence of a genuine issue of material fact."  *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact." Fed.R.Civ.P. 56(c)(1)(A), (B).

"Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *Oracle Corp.*, 627 F.3d at 387 (*citing Celotex*, 477 U.S. at 325); *see also* Fed.R.Civ.P. 56(c)(1)(B).  Summary judgment should be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *See Celotex*, 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.*

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.

4

*See* Fed.R.Civ.P. 56(c)(1); *Matsushita*, 475 U.S. at 586 n.11.  "A plaintiff's verified

complaint may be considered as an affidavit in opposition to summary judgment if

it is based on personal knowledge and sets forth specific facts admissible in

evidence." *Lopez v. Smith*, 203 F.3d 1122, 1132 n.14 (9th Cir. 2000) (en banc).

The opposing party must demonstrate that the fact in contention is material, i.e., a

fact "that might affect the outcome of the suit under the governing law," and that

the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return

a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626,

630 (9th Cir. 1987).

      "In evaluating the evidence to determine whether there is a genuine issue of

fact," the court draws "all inferences supported by the evidence in favor of the

non-moving party." *Walls v. Cent. Costa Cnty. Transit Auth.*, 653 F.3d 963, 966

(9th Cir. 2011).  It is the opposing party's obligation to produce a factual predicate

from which the inference may be drawn. *See Richards v. Nielsen Freight Lines*,

810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the

opposing party "must do more than simply show that there is some metaphysical

doubt as to the material facts." *Matsushita*, 475 U.S. at 586 (citations omitted).

      By notices provided on May 10, 2019 (Docs.  63, 67), Mr. Gray was advised

of the requirements for opposing a motion brought pursuant to Rule 56 of the

Federal Rules of Civil Procedure.  *See Rand v. Rowland*, 154 F.3d 952, 957 (9th

Cir.  1998)(en banc); *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir.  1988).

### B.  DEFENDANT HARDING'S SECOND MOTION FOR SUMMARY JUDGMENT BASED ON FAILURE TO EXHAUST

The Prison Litigation Reform Act ("PLRA")'s exhaustion requirement

states:

> [n]o action shall be brought with respect to prison conditions under
> section 1983 of this title, or any other Federal law, by a prisoner
> confined in any jail, prison, or other correctional facility until such
> administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a); *see also Porter v. Nussle*, 534 U.S. 516, 524-25 (2002);

*Booth v. Churner*, 532 U.S. 731, 741 (2001).  This means a prisoner must

"complete the administrative review process in accordance with the applicable

procedural rules, including deadlines, as a precondition to bringing suit in federal

court."  *Woodford v. Ngo*, 548 U.S. 81, 88 (2006).

The Court previously found that Mr. Gray did not file an informal resolution

against Officer Harding and did not file a complaint under the grievance procedure

alleging that any MSP officer retaliated against him by reprimanding him for

communications with other inmates outside the day room.  (April 8, 2019 Order

Adopting Findings and Recommendations, Doc. 55 at 4-5.)  But Mr. Gray alleged

in his Complaint that Defendant Harding wrote him up in retaliation for filing the

grievance against Ms. Bostwick.  The record was unclear whether Mr. Gray was

actually issued a disciplinary write-up by Officer Harding, whether Mr. Gray

appealed a disciplinary write-up by Officer Harding, or whether any such

disciplinary proceedings constituted proper exhaustion of Mr. Gray's retaliation

claims.  The existence of these disputed issues of material fact precluded summary

judgment.  (April 8, 2019 Order Adopting Findings and Recommendations Doc. 55

at 13.)

Officer Harding has now filed an affidavit indicating that he does not recall

ever having issued a disciplinary infraction against Mr. Gray.  (Harding Statement

of Undisputed Facts, Doc. 62 at ¶ 2.)  In addition, Defendants presented undisputed

evidence that there is no record of Mr. Gray receiving a disciplinary infraction

relating to the unit rule prohibiting inmates from visiting with one another on the

upper tier walkway in Mr. Gray's disciplinary infractions records at MSP, the D

Unit records, or the Offender Management Information System.  (Harding

Statement of Undisputed Facts, Doc. 62 at ¶¶ 3-4.)

In contrast, Mr. Gray presented no evidence of an actual write-up.  Rather,

Mr. Gray argues that the issue is not whether or not he received a disciplinary

write-up on this issue.  (Doc. 68.)  The Court disagrees.  Whether or not Mr. Gray

exhausted his claim against Officer Harding turns on whether Officer Harding

issued a disciplinary write-up to Mr. Gray.  It is undisputed that Mr. Gray did not

exhaust Defendant Harding's actions through the prison grievance process.  The

7

only remaining issue then is whether the issue was potentially exhausted through the disciplinary process.  While there was previously an issue of fact regarding this, Defendants have presented undisputed evidence that Mr. Gray did not receive a disciplinary write-up.  Therefore, Officer Harding's Motion for Summary Judgment based on Failure to Exhaust (Doc. 60) should be granted.

### C.   DEFENDANT HARRIS'S NON-PROCEDURAL MOTION FOR SUMMARY JUDGMENT

#### 1.   FACTS[1]

On February 16, 2017, Mr. Gray submitted an Offender/Staff Request (OSR) Form stating,

> I would like to inform whomever of a bad situation & an attempt to possible attack on another inmate by a Librarion inmate with the knowledge & approval of Merrissa Bostwick.  Miss Bostwick has told inmate Ingold could steal coffee, paper, newspapers, magazines, & typewriter ribbons to sell & trade.  Inmate Ingold has told a few other inmates that was going to stab inmate Ellison in the neck if he continued as the Legal Librarian.  I have had a lot of Great advise & help from inmate Ellison on looking up & copying of much needed case laws & case numbers to help me in my legal case.  I could appreciate inmate Ellison getting back to work as legal librarian. Ellison is a great asset to what little of our legal library system has gone down to & his knowledge is irreplaceable.

(February 16, 2017 OSR, Doc. 66-2.)

---

[1]Mr. Gray failed to file a statement of disputed facts in response to Defendants' motion as required by Local Rule 56.1(b).  Pursuant to Local Rule 56.1(d), Mr. Gray's failure to file a statement of disputed facts is deemed an admission that no material facts are in dispute.

Marisa Bostwick, the MSP Director of Education, met with Mr. Gray on February 22, 2017 to discuss the February 16 OSR. Also present were Defendant Harris and MSP staff person Anna Krogstad. (Statement of Undisputed Facts, Doc. 66 at ¶ 21.) Ms. Bostwick asked Mr. Gray to identify "Merrissa Bostwick." Mr. Gray replied that "Merrissa Bostwick" was the staff librarian. Ms. Bostwick informed Mr. Gray that she was Marisa Bostwick, but Mr. Gray insisted that she was not. (Statement of Undisputed Facts, Doc. 66 at ¶ 22.)

After Mr. Gray demonstrated that he did not know the identity of the person he had named as "Merrissa Bostwick" in the OSR, Officer Harris informed Mr. Gray that he would likely be cited for submitting a false statement to a staff member and that he could be placed in prehearing confinement, or "lock up," as a result. (Statement of Undisputed Facts, Doc. 66 at ¶¶ 24, 28.) Montana State Prison Procedure, at MSP 3.4.1, provides for a disciplinary infraction of "Lying or providing a false statement to a staff member." Standard procedures at Montana State Prison also include MSP Procedure No. 3.4.100, and under paragraphs 5 and 6 of MSP 3.4.100, an inmate may be placed in prehearing confinement. (Statement of Undisputed Facts, Doc. 66 at ¶ 5.)

Officer Harris contends he informed Mr. Gray of the possibility of an infraction to provide Mr. Gray the opportunity to correct the false accusations in his OSR. (Statement of Undisputed Facts, Doc. 66 at ¶ 29.)

Mr. Gray contends that Officer Harris required Mr. Gray to read the OSR outloud and then Officer Harris made the statement, "I have a feeling that I am going to send you to the 'hole' and that you will disappear from that, and don't worry, that happens here a lot, and no one questions what happens to inmates." (Doc. 76 at 19, ¶ 15.)

Officer Harris did not issue a disciplinary infraction to Mr. Gray.  (Statement of Undisputed Facts, Doc. 66 at ¶ 30.)  But, Director Bostwick issued a disciplinary infraction against Mr. Gray pursuant to MSP 3.4.1 for providing a false statement to a staff member.  Director Bostwick and Ms. Krogstad submitted statements for review by Disciplinary Hearing Officer Karla Ivie.  Following the disciplinary hearing, Mr. Gray appealed Officer Ivie's finding that he was guilty of the infraction.  Associate Warden Wood reviewed and affirmed Officer Ivie's decision.  (Statement of Undisputed Facts, Doc. 66 at ¶ 6.)

Mr. Gray now admits that he was mistaken regarding the identity of Ms. Bostwick.  (Doc. 76 at 19, ¶ 11.)

## 2. ANALYSIS

Mr. Gray first attempts to support his claims by relying on a number of MSP policies and procedures.  To the extent that Mr. Gray is purporting to allege that any named defendant violated a prison policy or regulation, such allegations fail to give rise to a federal civil rights claim.  *Cousins v. Lockyer*, 568 F.3d 1063, 1070

(9th Cir. 2009) (the failure to follow prison regulations or policies is not a federal constitutional violation).

Similarly, Mr. Gray cannot establish a federal constitutional claim based only on alleged verbal harassment.  Mere verbal harassment and threats do not suffice to allege a constitutional claim under section 1983.  *See Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996), amended, 135 F.3d 1318 (9th Cir. 1998) ("disrespectful and assaultive comments" insufficient); *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987) (verbal harassment insufficient); *Gaut v. Sunn*, 810 F.2d 923, 925 (9th Cir. 1987) (threats of bodily harm by prison guard insufficient).

The only claim remaining before the Court is Mr. Gray's allegation that Officer Harris retaliated against him by threatening that he could be placed in the "hole" based upon his statements in his OSR.  Officer Harris contends he is entitled to qualified immunity.  Qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  "Qualified immunity balances two important interests - the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties

11

reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  The qualified immunity inquiry has two prongs:  (1) "whether the facts that a plaintiff has . . . shown . . . make out a violation of a constitutional right," and (2) "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Wilkinson v. Torres*, 610 F.3d 546, 550 (9th Cir. 2010) (*quoting Pearson*, 555 U.S. at 232).

Within the prison context, a viable claim of First Amendment retaliation entails five basic elements:  (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (*citing Resnick v. Hayes*, 213 F.3d 443, 449 (9th Cir. 2000)).  It is the plaintiff's burden to prove each of these elements.  *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995).

"[T]he mere threat of harm can be an adverse action . . .." *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012) (*quoting Brodheim v. Cry*, 584 F.3d 1262, 1270 (9th Cir. 2009)).  It is not necessary for a plaintiff to claim "an explicit, specific threat of discipline or transfer," as statements "intimating that some form of punishment or adverse regulatory action would follow" are sufficient to satisfy this element. *Brodheim*, 584 F.3d at 1270 (*quoting Okwedy v. Molinari*, 333 F.3d

339, 343 (2nd Cir. 2003) (per curiam) (internal marks omitted)).  Out of an
abundance of caution, the Court will assume that Officer Harris's statements or
threats of sending Mr. Gray to the hole (as alleged by Mr. Gray) are sufficient to
establish an adverse action.

It is also undisputed that these threats/statements were made because of the
content of Mr. Gray's OSR.  The disputed issues are whether Mr. Gray's OSR
constituted protected conduct, whether the false statements in the OSR constituted
protected conduct, and whether Officer Harris had a legitimate correctional goal in
threatening the write-up.

The Court finds that Officer Harris is entitled to qualified immunity on Mr.
Gray's First Amendment retaliation claim.  First, as Defendants argue, it was not
clearly established in February 2017 that an attempt to report criminal conduct in
an OSRs was protected conduct.  In *Entler v. Gregoire*, 872 F.3d 1031 (9th Cir.
2017), the Ninth Circuit held as a matter of first impression "that both the filing of
a criminal complaint by a prisoner, as well as the threat to do so, are protected by
the First Amendment, provided they are not baseless."  *Id.* at 1043.  But, the Court
in *Entler* specifically found that because it was an issue of first impression, a
reasonable official would not have necessarily understood that they were violating
a constitutionally protected right.  *Id.* at 1044.  As *Entler* was decided after the
events at issue in this case, Officer Harris is entitled to qualified immunity because

13

it was not clearly established in February 2017 that reports of criminal conduct in an OSR was protected conduct.

In addition, the Court finds that Officer Harris is entitled to qualified immunity because Mr. Gray's insistence on pursuing his statements against Ms. Bostwick after being advised of Ms. Bostwick's identity was not protected conduct under the First Amendment.  The Court disagrees with Defendants' arguments and the analysis in *Curry v. Hall*, 839 F.Supp. 1437 suggesting that false statements receive absolutely no protection under the First Amendment.  As set forth in *United States v. Alvarez*, 567 U.S. 709 (2012), "[t]he Court has never endorsed the categorical rule the Government advances:  that false statements receive no First Amendment protection."  *Id*. at 719.  Rather, statements are not protected under the First Amendment if they are "knowing or reckless" falsehoods.  *Id.; see also Garrison v. Lousiana*, 379 U.S. 64, 75 (1964) (concluding "false statements made with reckless disregard of the truth, do not enjoy constitutional protection").

As such, the Court disagrees with Defendants' assertion that Mr. Gray's statements in his OSR were unprotected merely because they were determined to be false statements.  The Court does find, however, that Officer Harris is entitled to qualified immunity because Mr. Gray's continued pursuit of his allegations against Ms. Bostwick after being confronted with the fact that he was clearly mistaken regarding the identity of Ms. Bostwick was a "knowing and reckless" falsehood.

14

Mr. Gray has provided no explanation as to why he continued to pursue his allegations against Ms. Bostwick even though he admits he was mistaken about her identity.

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). This inquiry is wholly objective and is undertaken considering the specific factual circumstances of the case. *Saucier*, 533 U.S. at 201. "The principles of qualified immunity shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law." *Pearson*, 555 U.S. at 245. The protection of qualified immunity applies regardless of whether the government official makes an error that is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Id.* at 231. The doctrine of qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law. . .." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). The right at issue must be narrowly defined in light of the specific context in the case, not at a high level of generality. *White v. Pauly*, 137 S.Ct. 548, 551 (2017); *Mullenix v. Luna*, 136 S.Ct. 305, 308-09 (2015).

The only action taken by Officer Harris in this case was that he advised Mr. Gray he could be disciplined for making false accusations against staff. Officer

Harris testified that his motivation was to inform Mr. Gray of the possibility of an

infraction and giving him an opportunity to correct false accusations in his OSR.

(Harris Affidavit, Doc. 66-1 at 4, ¶ 7.)  It is undisputed that Mr. Gray had made a

mistake in his accusation against Ms. Bostwick.  Mr. Gray had never even seen or

met Ms. Bostwick prior to the February 22, 2018 meeting when she confronted

him regarding the OSR.  (Doc. 76 at 19, ¶ 8.)

Mr. Gray, however, was not subject to discipline for simply making a

mistake regarding Ms. Bostwick's identity.  Rather, he was disciplined for insisting

on his allegations against Ms. Bostwick even after he was unable to identify her,

and she identified herself to Mr. Gray.  The Court finds that Officer Harris (and

even Ms. Bostwick by issuing the disciplinary report) reasonably believed that Mr.

Gray had made "knowing or reckless" false statements in his OSR.  There is no

genuine issue of material fact that Mr. Gray made knowing and/or reckless false

statements which he refused to recant when he realized that he did not know Ms.

Bostwick.  As set forth above, knowing or reckless false statements are not entitled

to First Amendment protection.  *Alvarez*, 567 U.S. at 719; *Garrison*, 379 U.S. 64,

75 (1964) ("false statements made with reckless disregard of the truth, do not enjoy

constitutional protection").  Whatever discipline Mr. Gray suffered as a result

(including Officer Harris's threats to send him to the hole and Ms. Bostwick's

16

disciplinary report), is not actionable under the First Amendment.  Defendant Harris's motion for summary judgment should be granted.

Based upon the foregoing, the Court issues the following:

## ORDER

1.  Mr. Gray's Motion for Addium (Doc. 58) (construed as a motion to compel) is DENIED.

2.  Mr. Gray's Motion for Pre-Trial Order (Doc. 59) is DENIED.

3.  Mr. Gray's Motion for Addendum (Doc. 74) (construed as a motion to compel) is DENIED.

Further, the Court issues the following:

## RECOMMENDATIONS

1.  Defendant Harding's Second Motion for Summary Judgment based on Failure to Exhaust (Doc. 60) should be GRANTED.

2.  Defendants' Non-Procedural Motion for Summary Judgment (Doc. 64) should be GRANTED

3.  Mr. Gray's Brief in Support of a Summary Judgment in Favor of Plaintiff Mr. Gray (Doc. 76) should be DENIED.

4.  The Clerk of Court should be directed to all close this matter and enter judgment in favor of Defendants pursuant to Rule 58 of the Federal Rules of Civil Procedure.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS &
## RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT

The parties may file objections to these Findings and Recommendations within fourteen (14) days after service (mailing) hereof.[2]  28 U.S.C.  § 636.  Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

This order is not immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Fed.R.App.P.  4(a), should not be filed until entry of the District Court's final judgment.

DATED this 7th day of November, 2019.


   */s/ John Johnston*_____
John Johnston
United States Magistrate Judge

---

[2]Mr. Gray is entitled to an additional three days after the fourteen-day period would otherwise expire to file his objections.

18